1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   WELLS FARGO BANK, N.A.,                    CASE NO. C13-0703 JLR

11                    Plaintiff,                ORDER ON SUMMARY
                                                JUDGMENT AND JUDGMENT
12        v.                                    ON THE PLEADINGS

13   PAUL FREDERICK GENUNG,

14                    Defendant.

15              **I.   INTRODUCTION**

16        This matter comes before the court on Plaintiff Wells Fargo Bank, N.A.'s ("Wells

17   Fargo") motion for summary judgment and/or judgment on the pleadings.  (Mot.

18   (Dkt. # 15).)  Defendant Paul Frederick Genung has not opposed this motion.  (*See*

19   *generally* Dkt.)  Having reviewed Wells Fargo's submission, the record, and the relevant

20   law, the court grants the motion with respect to Mr. Genung's counterclaims and grants in

21   part and denies in part the motion with respect to Wells Fargo's claims.

22

## II.    FACTS

The following facts are not disputed.  On or about April 8, 2008, Mr. Genung signed an Adjustable Rate Mortgage Note ("the Note") and a Deed of Trust to obtain a loan in the amount of $999,999.00 from Wachovia Mortgage, F.S.B.[1]  (*See* Note (Dkt. # 16-1); Compl. (Dkt. # 1) ¶¶ 5-6.)  This loan was secured by a lien on Mr. Genung's property located at 1633 Windermere Dr. E., Seattle, Washington 98112-3737 ("the Property").  (Compl. ¶ 9.)  By signing the note, Mr. Genung agreed that "I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due . . . ."  (Note at 5.)

In January, 2009, Mr. Genung defaulted on his obligations under the Note by failing to make loan payments.  (Compl. ¶ 12; Dolan Decl. (Dkt. # 16) ¶ 10.)  Wells Fargo initiated non-judicial foreclosure proceedings against the Property; a trustee's sale was scheduled for June 11, 2010.  (Comp. ¶ 13.)  At the time, Mr. Genung's default was $74,567.86 and the outstanding balance on the loan was $1,024,728.14.  (*Id.*)  Mr. Genung and his friend, Craig W. Rhyne executed and recorded four fraudulent documents in an attempt to forestall the imminent trustee's sale.  (*Id*. ¶ 14.)  The documents purported to convey the Property to Mr. Rhyne and then back to Mr. Genung free of encumbrances.  (*Id*. ¶ 15.)

---

[1] As the result of a series of mergers, Wachovia Mortgage, F.S.B. now operates as a division of Wells Fargo.  (Compl. ¶ 10; Dolan Decl. (Dkt. # 16) ¶¶ 4-6.)

ORDER- 2

1      In October, 2011, Wells Fargo filed an action in this court to set aside the

2  fraudulent documents.  (*Id.* ¶ 18; *see Wells Fargo Bank, N.A. v. Paul F. Genung and*

3  *Craig W. Rhyne*, 2:11-cv-1698JLR.)  The court granted summary judgment that the

4  putative transfer constituted a fraudulent conveyance in violation of Washington's

5  Uniform Transfer Act.  (C11-1698JLR Dkt. # 23.)  In a follow-up order dated August 12,

6  2012, the court ordered that the four fraudulent documents be "declared void" and

7  "expunged from the public record."  (C11-1698JLR Dkt. # 28.)

8      In November, 2012, Wells Fargo received a document from Mr. Genung titled

9  "Draft/Money Order."  (Money Order (Dkt. # 1-1); Compl. ¶ 21.)  The document ("the

10  Money Order") purports to make $1,395,00.00 payable to Wells Fargo from a private

11  account with the United States Department of the Treasury referenced by what appears to

12  be Mr. Genung's social security number.  (Money Order at 1.)  The Money Order

13  purports to discharge "all principal, interest, costs, and fees related to" Mr. Genung's

14  loan.  (*Id.*)  The Money Order was accompanied by a "Notice of Tender of Full Payment"

15  which reiterates that the "tender of payment is for setoff, settlement, and closure of all

16  outstanding debt."  (*Id.* at 2.)  The Notice of Tender also purports to set forth additional

17  obligations of Wells Fargo, such as the obligation to return a "certificate of dishonor" to

18  Mr. Genung before challenging the validity of the Money Order.  (*Id.*)

19      On December 7, 2012, counsel for Wells Fargo sent a letter to Mr. Genung

20  notifying him that the Money Order did not alter Mr. Genung's legal obligations under

21  the Note.  (Compl. ¶ 22, Ex. B.)  Mr. Genung returned the letter with a signature, a

22  fingerprint, and a stamp stating "Conditionally Accepted for Value Returned for Value."

ORDER- 3

1  (Compl. ¶ 23, Ex. C.)  The stamp is signed "Paul Frederick," which is an alias used by

2  Mr. Genung.  (*Id.*)

3        On December 21, 2012, "Paul Frederick" as "Authorized Representative" for Mr.

4  Genung recorded a document with the Recorder's Office in King County, Washington

5  titled "AFFIDAVIT OF SATISFACTION OF MORTGAGE."  (Affidavit (Dkt. # 1-4).)

6  This document ("the Affidavit") purports to certify that Mr. Genung's mortgage is "PAID

7  IN FULL."  (*Id.* at 1.)  The Affidavit claims that mortgage is paid in full because the

8  Money Order "is a legal and lawful discharge of the original Mortgage Note obligation."

9  (*Id.*)

10        On February 11, 2013, Wells Fargo recorded a document titled "Notice Of Non-

11  Acceptance Of Draft/Money Order And Satisfaction Of Mortgage" with the Recorder's

12  Office in King County, Washington.  (Compl. ¶ 26, Ex. F.)  This document clarifies that

13  the Affidavit "contains material misrepresentations and was recorded without Wells

14  Fargo's advance knowledge or consent."  (*Id.* at 3.)  The document further states: "The

15  loan remains due and owing, and the Deed of Trust remains in full force and effect."

16  (*Id.*)

17        Wells Fargo filed this action against Mr. Genung on April 19, 2013.  (*See* Compl.)

18  Wells Fargo brings claims for (1) breach of contract, (2) a declaratory judgment that the

19  Money Order and Affidavit are void and expunged from the public record, and (3)

20  injunctive relief to prevent Mr. Genung from creating and recording additional false

21  documents regarding the Property.  (*See* Compl.)  In response, Mr. Genung filed self-

22  titled counterclaims for (1) "Default by Failure to Timely and Fully Respond under

ORDER- 4

1 | Terms of Tender Offer," (2) "Breach of Legal and Commercial Duties under Contract,"

2 | and (3) "Barratry and Public Defamation of Character." (*See* Ans. (Dkt. # 8).)

3 |     Wells Fargo now moves for summary judgment on its three claims and for

4 | summary judgment or judgment on the pleadings on Mr. Genung's counterclaims.  (*See*

5 | *generally* Mot.)  Mr. Genung has not responded to Wells Fargo's motion.  (*See* Not. of

6 | Lack of Opp'n (Dkt. # 18); *see generally* Dkt.).

7 | **III.    ANALYSIS**

8 | **A.    Judgment on the Pleadings Standard**

9 |     Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on

10 | the pleadings after the pleadings are closed.  Judgment on the pleadings "is properly

11 | granted when, taking all the allegations in the pleadings as true, a party is entitled to

12 | judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th

13 | Cir. 2011).  In the context of dismissal for failure to state a claim, the same standard

14 | governs a Rule 12(c) motion for as governs a Rule 12(b)(6) motion. *Dworkin v. Hustler*

15 | *Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).  Specifically, to avoid dismissal, "a

16 | complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

17 | that is plausible on its face." *Ashcroft v. Iqbal*, 557 U.S. 662, 678 (2009).  Dismissal for

18 | failure to state a claim "is proper if there is a lack of a cognizable legal theory or the

19 | absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force*

20 | *v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).  In ruling on a motion to dismiss, a court

21 | may consider the pleadings, documents attached to the pleadings, and documents

22 |

1  incorporated by reference in the pleadings. *United States v. Ritchie*, 342 F.3d 903, 908

2  (9th Cir. 2003) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)).

3  **B.     Summary Judgment Standard**

4           Federal Rule of Civil Procedure 56 permits a court to grant summary judgment

5  where the moving party demonstrates (1) the absence of a genuine issue of material fact

6  and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S.

7  317, 322 (1986); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The

8  moving party bears the initial burden of production of showing an absence of a genuine

9  issue of material fact. *Celotex*, 477 U.S. at 323.

10          If the moving party does not bear the ultimate burden of persuasion at trial, it can

11  show an absence of issue of fact in two ways: (1) by producing evidence negating an

12  essential element of the nonmoving party's case, or, (2) showing that the nonmoving

13  party lacks evidence of an essential element of its claim or defense. *Nissan Fire &*

14  *Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the

15  moving party will bear the ultimate burden of persuasion at trial, it must establish a prima

16  facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing,*

17  *Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence

18  that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at 1473.

19          If the moving party meets its burden of production, the burden then shifts to the

20  non-moving party to designate specific facts demonstrating the existence of genuine

21  issues for trial. *Celotex*, 477 U.S. at 324.  The non-moving party "may not rest upon the

22  mere allegations or denials of the [nonmoving] party's pleading," but must provide

1    affidavits or other sources of evidence that "set forth specific facts showing that there is a

2    genuine issue for trial" from which a factfinder could reasonably find in the non-moving

3    party's favor.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

4    (1986).  In determining whether the factfinder could reasonably find in the non-moving

5    party's favor, "the court must draw all reasonable inferences in favor of the nonmoving

6    party."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

7    **C.    Wells Fargo's Claims**

8          The following sections address Wells Fargo's claims for breach of contract, a

9    declaratory judgment, and a permanent injunction.[2]

10          **1.    Breach of Contract**

11          Wells Fargo claims that Mr. Genung breached his obligations under the Note.

12   (Mot. at 10-11.)  The elements of a claim for breach of contract are (1) the existence of a

13   valid contract, (2) breach of that contract, and (3) damages resulting from the breach.  *See*

14   *Fid. & Deposit Co. of Maryland v. Dally*, 201 P.3d 1040, 1044 (Wash. 2009).  Mr.

15   Genung admits all of three of these elements in his answer to Wells Fargo's complaint.

16          Specifically, Mr. Genung admits that:

17   (1) On April 8, 2008, Mr. Genung executed an Adjustable Rate Mortgage Note to obtain

18   a loan of $999,999.00 from Wachovia Mortgage, F.S.B.  (Ans. ¶ 1 (admitting Compl. ¶¶

19

20          [2] Wells Fargo submits that, pursuant to Local Rule LCR 7(b)(2), Mr. Genung's failure to
     file an opposition is an admission that Wells Fargo's motion has merit.  (*See* Not. of Lack of
     Opp'n at 1 (citing Local Rules W.D. Wash. LCR 7(b)(2).)  However, the Ninth Circuit has held
21   that "a nonmoving party's failure to comply with local rules does not excuse the moving party's
     affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law."
     *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).  Therefore, the court will not rely
22   on Local Rule LCR 7(b)(2) in this context.

1  5, 6).)  The Note is a valid contract that exists between Wells Fargo and Mr. Genung.

2  (*Id.* ¶ 9 (admitting Compl. ¶ 31).)  Section 8 of the Note provides that Mr. Genung will be

3  in default if he "do[es] not pay the full amount of each monthly payment on the date it is

4  due."  (*Id.* ¶ 1 (admitting Compl. ¶ 7).)

5  (2) Mr. Genung breached his obligations under the Note by failing to make timely loan

6  payments.  (*Id.* (admitting Compl. ¶ 12); *id.* at ¶ 9 (admitting Compl. ¶ 32).)  As of March

7  10, 2010, Mr. Genung's default was in the amount of $74,567.86, and the outstanding

8  balance on the loan was $1,024,728.14.  (*Id.* ¶ 1 (admitting Compl. ¶ 13).)

9  (3) Wells Fargo suffered damages as a result of Mr. Genung's breach. (*Id.* ¶ 9 (admitting

10  Compl. ¶ 33).)

11       "A statement in a complaint, answer or pretrial order is a judicial admission, as is

12  a failure in an answer to deny an allegation."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861

13  F.2d 224, 226 (9th Cir. 1988).  Judicial admissions "have the effect of withdrawing a fact

14  from issue and dispensing wholly with the need for proof of the fact."  *Id.*  As such,

15  factual assertions in pleadings are "conclusively binding on the party who made them."

16  *Id.*  Because Mr. Genung's admissions in his answer are "conclusively binding," and

17  because the admissions encompass all elements of the breach of contract claim, judgment

18  in favor of Wells Fargo is appropriate.[3]

19

20  _____

21       [3] Although Mr. Genung admitted all elements of the contract claim in his answer, he
    denied that Wells Fargo was "entitled to entry of a judgment . . . for breach of contract."  (*See*
    Ans. ¶¶ 9 (admitting Compl. ¶¶ 30-33), 10 (denying Compl. ¶ 34).)  Mr. Genung apparently

22  believes that his Money Order retroactively satisfied his obligations under the Note.  (*See* Ans.

1    Moreover, although these admissions "dispense wholly with the need for proof,"

2  *id.*, Wells Fargo has also provided uncontroverted evidence that Mr. Genung has

3  breached his obligations under the Note:  Mr. Dolan, a previous employee of Wachovia

4  Mortgage and current employee of Wells Fargo with custody of and access to Mr.

5  Genung's loan file, testifies that Mr. Genung defaulted on the Note on January 1, 2009,

6  and has not made any payments since December 15, 1998.  (Dolan Dec. ¶¶ 8-11.)

7  Because Mr. Genung raises no countervailing evidence, no reasonable fact-finder could

8  find that he has not breached the contract.  Accordingly, the court grants summary

9  judgment on Wells Fargo's breach of contract claim.[4]

10    **2. Declaratory Judgment**

11    Wells Fargo seeks a declaratory judgment that the Money Order and Affidavit are

12  void and expunged from the public record.  (Mot. at 11.)  The Declaratory Judgment Act

13  provides:  "In a case of actual controversy within its jurisdiction . . . any court of the

14  United States . . . may declare the rights and other legal relations of any interested party

15  seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C

16  § 2201(a).  An "actual controversy" exists when "the facts alleged, under all the

17  circumstances, show that there is a substantial controversy, between parties having

18

19

---

20  ¶¶ 14-15.)  As discussed in the following Section III(C)(2), that apprehension is incorrect.  Mr.

21  Genung's mistaken belief does not preclude summary judgment on this claim.

22    [4] In doing so, the court notes that the amount of damages caused by Mr. Genung's breach
remains unproven.

ORDER- 9

1    adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

2    declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

3           Here, an actual controversy exists between Wells Fargo and Mr. Genung as to the

4    status of the loan: Mr. Genung maintains that his Money Order is valid and satisfies all of

5    his obligations under the loan (*see* Ans. ¶¶ 14-15, 30-31; Affidavit), and Wells Fargo

6    maintains that the loan remains due (s*ee generally* Compl).  The controversy is of

7    sufficient immediacy because Mr. Genung has evinced a pattern of recording documents

8    that can hinder Wells Fargo's ability to foreclose on the property that serves as a security

9    for the loan.  (*See* Compl. ¶¶ 14-19.)

10          The Money Order is fraudulent on its face.  The Money Order and accompanying

11   Notice of Tender profess to satisfy Mr. Genung's obligations under the Note.  (Money

12   Order at 1,2.)  Specifically, the Money Order purports to make $1,395,00.00 payable to

13   Wells Fargo from a private account with the United States Department of the Treasury

14   referenced by what appears to be Mr. Genung's social security number.  (*Id.* at 1.)

15   Needless to say, the Money Order accomplishes no such payment.  (*See* Dolan

16   Decl. ¶ 13.)  A document supposedly ordering money to be drawn against the United

17   States Treasury using a social security number is not legal tender.  (*See* Compl. Ex. B.)

18          Similarly, the Affidavit is fraudulent on its face.  The Affidavit purports to certify

19   that Mr. Genung's loan is "PAID IN FULL" because the Money Order "is a legal and

20   lawful discharge of the original Mortgage Note obligation."  (Affidavit.)  However, as

21   discussed above, the Money Order does not provide any payment to Wells Fargo, from

22   the United States Treasury or otherwise.  And Mr. Genung himself has not provided any

ORDER- 10

1  payment to Wells Fargo since December 15, 2008.  (Dolan Decl. ¶ 10.)  As such, the loan
2  is still outstanding and the Affidavit is false.

3      Once Wells Fargo has made a prima facie showing in support of its position, the
4  burden shifts to Mr. Genung to designate specific facts demonstrating the existence of a
5  genuine issue of material fact. *Celotex*, 477 U.S. at 324.  In his answer to Wells Fargo's
6  complaint, Mr. Genung denies that the two documents are false or fraudulent.  (Ans. ¶¶ 2,
7  5, 8.)  However, a party opposing a motion for summary judgment is required to go
8  beyond the pleadings and set forth specific facts by evidence cognizable under Rule 56.
9  *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000).
10  Mr. Genung has provided no evidence that the Money Order accomplishes payment to
11  Wells Fargo or that the Affidavit's assertion that the loan has been satisfied is true.

12      In light of this record, court concludes that no reasonable fact-finder could
13  conclude that the Money Order and Affidavit are valid.  Therefore, the court grants Wells
14  Fargo's request for a declaratory judgment that the Money Order and Affidavit are void
15  and shall be expunged from the public record.  The court further orders that Mr. Genung
16  shall not file any additional fraudulent or frivolous documents interfering with Wells
17  Fargo's rights under the Note and Deed of Trust.

18  ### 3.  Permanent Injunction

19      Wells Fargo argues that it is entitled to a permanent injunction enjoining Mr.
20  Genung from recording further documents pertaining to the Note and Deed of Trust
21  without obtaining the court's prior approval.  (Mot. at 12.)  An injunction "is a drastic
22  and extraordinary remedy, which should not be granted as a matter of course." *Monsanto*

1  *Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010).  To merit an award of permanent

2  injunctive relief, "a plaintiff must meet four well-established requirements:  (1) that it has

3  suffered an irreparable injury; (2) that remedies available at law, such as monetary

4  damages, are inadequate to compensate for that injury; (3) that, considering the balance

5  of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

6  that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v.*

7  *MercExchange, L.L.C.,* 547 U.S. 388, 391(2006).

8        With respect to irreparable harm, Wells Fargo's counsel argues in its motion

9  that Mr. Genung's fraudulent documents "hindered Wells Fargo's ability to recover on

10 the Note by foreclosure against the Property."  (Mot. at 13.)  When a plaintiff moves for

11 summary judgment on its claims, it must present evidence that, if uncontroverted, would

12 entitle it to prevail on the issue. *UA Local 343*, 48 F.3d at 1471; *see also Farrakhan v.*

13 *Gregoire*, 590 F.3d 989, 1003.  Wells Fargo, however, provides no evidence to support

14 its assertion of irreparable harm.  As such, Wells Fargo fails to meet its burden of

15 production and summary judgment is not appropriate.

16       Moreover, even accepting Wells Fargo's counsel's argument, the court finds that

17 a reasonable fact-finder could find that a delay in the foreclosure process does not rise to

18 the level of irreparable harm necessary to justify the "drastic and extraordinary remedy"

19 of a permanent injunction. *See Monsanto*, 561 U.S. at 139.  Therefore, the court denies

20 Wells Fargo's motion for a preliminary injunction

21

22

**D.     Mr. Genung's Counterclaims**

The following sections address Mr. Genung's counterclaims for "default," breach of contract, barratry, and defamation.

**1.   "Default"**

Mr. Genung's claim for "default by failure to timely and fully respond under terms of [the] tender offer" is premised on his apparent belief that the Money Order was a contractual offer that became binding when Wells Fargo failed to timely respond.  (Ans. ¶¶ 22-28.)  Mr. Genung alleges that, under the Truth-in-Lending Act ("TILA") and Regulation Z, an offer becomes binding on the parties if the offeree fails to "withdraw" within 72 hours after the tender.  (*Id*. ¶ 22.)  Based on this understanding of the Truth-in-Lending Act, Mr. Genung requests a declaratory judgment that Wells Fargo "tacitly accepted" his "offer" and is therefore contractually obligated to abide by the terms of the Money Order.  (Ans. ¶ 28.)

This claim has no basis in law.  Putting aside the fact that the Money Order does not accomplish any payment, the Truth-in-Lending Act and Regulation Z simply do not contain any provision establishing that an offer is "tacitly accepted" after 72 hours.  *See generally* Truth-In-Lending Act, 15 U.S.C. §§ 1601 *et seq*. (2012); Regulation Z, 12 C.F.R. Part 226.  Neither do the Note or the Deed of Trust contain such a provision.  Because this claim is not grounded in any cognizable legal theory, dismissal is appropriate.  *See Conservation Force*, 646 F.3d at 1242.  Therefore, the court grants judgment on the pleadings on Mr. Genung's "default" counterclaim.

### 2.  Breach of Contract

Mr. Genung's claim for breach of contract is predicated on his theory that Wells Fargo "tacitly accepted" his tender of the Money Order and is therefore bound by the terms in the Notice of Tender.  (Ans. ¶¶ 30-33.)  Mr. Genung alleges that Wells Fargo has not satisfied certain requirements specified in the Notice of Tender, including, for example, providing Mr. Genung a "CERTIFICATE OF DISHONOR" prior to initiating this litigation.  (*Id.* ¶ 31.)  To support his allegations, Mr. Genung references "UCC 3-307," apparently referring to § 3-307 of the Uniform Commercial Code ("UCC").  (*Id.*)

This claim fails for the same reason that Mr. Genung's "default" claim failed: the Money Order does not establish a contract between Wells Fargo and Mr. Genung.  Wells Fargo's and Mr. Genung's obligations to each other are defined by the Note and the Deed of Trust.  Mr. Genung has provided no authority to show otherwise: UCC § 3-307, which concerns a "notice of breach of fiduciary duty," is inapposite.  Therefore, court grants judgment on the pleadings on Mr. Genung's breach of contract counterclaim.

### 3.  Barratry

Mr. Genung alleges that Wells Fargo's actions in litigating this matter constitute barratry.  (Ans. ¶¶ 35, 41.)  But Mr. Genung provides no explanation of why this claim  is viable.  This court has not found any authority establishing a civil cause of action for barratry in Washington.  Washington's criminal statute for barratry provides that:  "Every person who brings . . . any false suit at law or in equity in any court of this state, with intent thereby to distress or harass a defendant in the suit . . . is guilty of a misdemeanor."

1   RCW 9.12.010.  However, this court has not found any authority indicating that RCW

2   9.12.010 establishes a private cause of action.

3          Even if the criminal statute did authorize suits by private citizens, Mr. Genung's

4   complaint fails to allege an element of barratry, namely, that Wells Fargo brought this

5   suit with intent to "distress or harass" Mr. Genung.  Dismissal of a claim is appropriate

6   where "there is a lack of a cognizable legal theory or the absence of sufficient facts

7   alleged under a cognizable legal theory." *Conservation Force*, 646 F.3d at 1242.  Both

8   grounds are met here.  Therefore, the court grants judgment on the pleadings on Mr.

9   Genung's barratry counterclaim.

10         **4.  Defamation**

11         Mr. Genung alleges that Wells Fargo's statements (either publicly recorded or

12  filed with the court) constitute "public defamation of character."  (Ans. ¶¶ 37, 38.)

13  Specifically, Mr. Genung takes issue with Wells Fargo's characterization of Mr.

14  Genung's documents as "false" and "fraudulent."  (*Id.*)  However, truth is a complete

15  defense to a claim of defamation.  *Taskett v. KING Broad. Co.*, 546 P.2d 81, 92 (Wash.

16  1976).  To prevail on this defense, a defendant need not prove the literal truth of every

17  statement, but instead must only show that the statement is "substantially true or that the

18  gist of the story, the portion that carries the 'sting,' is true." *Mark v. Seattle Times*, 635

19  P.2d 1081, 1092 (Wash. 1981).

20         Here, as evidenced by this court's two rulings holding that Mr. Genung recorded

21  fraudulent documents, Wells Fargo's statements that Mr. Genung has created and

22  recorded fraudulent documents are substantially true.  (*See supra* § III(C)(2) (holding that

ORDER- 15

1  the Money Order and Affidavit are false); C11-169JLR Dkt. # 28 (holding that four other

2  documents recorded by Mr. Genung are fraudulent).)  Accordingly, the court grants

3  summary judgment on Mr. Genung's defamation counterclaim.

4                          **IV.    CONCLUSION**

5          For the foregoing reasons, the court GRANTS Wells Fargo's motion for summary

6  judgment on Wells Fargo's breach of contract claim and declaratory judgment claim and

7  DENIES Wells Fargo's motion for summary judgment on a permanent injunction.  The

8  court also GRANTS Wells Fargo's motion for judgment on the pleadings against all of

9  Mr. Genung's counterclaims.[5]  The court further ORDERS that Mr. Genung shall not file

10  any additional fraudulent or frivolous documents interfering with Wells Fargo's rights

11  under the Note and Deed of Trust.

12          Dated this 18th day of November, 2013.

13

14

15                                                    _____

16                                                    JAMES L. ROBART
                                                      United States District Judge

17

18

19          _____

20          [5] Because the court finds that further amendments would be futile, the court dismisses
    Mr. Genung's counterclaims without granting leave to amend.  *See Ascon Props., Inc. v. Mobil*

21  *Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (stating that leave to amend need not be granted
    when amendment would be "an exercise in futility").

22

ORDER- 16